## COURT OF APPEALS,

### Dec. 16, 1913.

# THE PEOPLE v. JOHN J. GUITON.

### (210 N. Y. 1.)

OLEOMARGARINE—AGRICULTURAL LAW, SEC. 38.

The provisions of the Agricultural Law against the manufacture and sale of imitation butter were intended to prohibit the use of artificial coloring matter in oleomargarine, which was not an essential ingredient of that article and which served the sole purpose of producing a color in imitation of natural butter, or of selecting ingredients as to color and proportions, or both, with the predetermination and purpose of producing an imitation coloring. The use in the manufacture of oleomargarine of recognized ingredients in their natural and primary condition and without predetermination or design of imitating naturally butter, though producing a shade of yellow resembling it, is not a deception and is not prohibited by the statute.

Appeal from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered October 26, 1912, reversing a judgment in favor of the defendants entered upon a dismissal of the complaint by the court on trial at Trial Term, a jury having been waived. The appellants have given a stipulation for judgment absolute upon affirmance, as provided in section 1337 of the Code of Civil Procedure.

The nature of the action and the facts, so far as material, are .stated in the opinion.

*William C. Breed* for appellants; *Thomas Carmody, attorney-general,* for respondent.

COLLIN, J.:

This action, instituted by the Commissioner of Agriculture of the State, is to recover from the defendants, constituting a mercantile firm, a penalty for a sale of oleomargarine, alleged to have been manufactured in imitation or semblance of natural butter, in contravention of section 38 of the Agricultural Law (Consol. Laws, chap. 1; Laws of 1909, chap. 9, secs. 30, 38). The decision of the trial court directed, under the findings of fact and conclusions of law, the judgment dismissing the complaint on the merits, which was reversed by the Appellate Division in the order appealed from.

Section 38 is: " Manufacture and sale of imitation butter prohibited. No person by himself, his agents or employees, shall produce or manufacture out of or from any animal fats or animal or vegetable oils not produced from unadulterated milk or cream from the same, the article known as oleomargarine or any article or product in imitation or semblance of natural butter produced from pure, unadulterated milk or cream of the same; or mix, compound with or add to milk, cream or butter any acids or other deleterious substance or any animal fats or animal or vegetable oils not produced from milk or cream, so as to produce any article or substance or any human food in imitation or in semblance of natural butter, nor sell, keep for sale or offer for sale any article, substance or compound, made, manufactured or produced in violation of the provisions of this section, whether such article, substance or compound shall be made or produced in this State or elsewhere. Any person manufacturing, selling, offering or exposing for sale any commodity or substance in imitation or semblance of butter, the product of the dairy, shall be deemed guilty of a violation of this chapter, whether he sells such commodity or substance as butter, oleomargarine or under any other name or designation whatsoever and irrespective of

any respresentations he may make relative to such commodity or substance.    *    *    * "

The oleomargarine was in a package within the maximum size, sealed, wrapped and labelled in all respects as prescribed by the Agricultural Law (sec. 41). It was sold as and for oleomargarine and there was no deception or attempt to deceive in the sale. The ingredients composing it, namely, oleo oil, cottonseed oil, neutral oil, cream, milk, butter and salt, were the recognized and lawful substantive ingredients of oleomargarine and were mixed or compounded in the usual way. It had a shade of yellow color which was derived *solely* from these ingredients in a natural condition. No ingredient was for the sole purpose of producing the shade of yellow. Some natural butter has a shade of yellow identical with its shade.

The attorney-general, in behalf of the State, asserts that oleomargarine in its natural condition is white; that the identity of color of the oleomargarine and of natural butter proved the manufacture of the oleomargarine " in imitation or semblance of natural butter produced from pure, unadulterated milk or cream of the same," and therefore in violation of the section, and the sale of it was by the section inhibited and penalized. He argues that the legislative intention was to protect against deception the buyers and consumers of butter by compelling the manufacturers of oleomargarine to put into it only such ingredients, or the usual ingredients having only such a color, as will give it a color other than that of natural butter. The counsel for the appellants asserts that the legislative intention was to interdict the use of an ingredient solely to give the product the color of natural butter, and the designed and conscious selection of the substantive ingredients of such color or colors or in such proportions as will effect an imitation, in the matter of color, of natural butter.

The legislative intention, if expressed and if lawful under the Federal and State Constitutions, is the law obligatory upon the courts as well as upon every citizen. Our duty is fulfilled by ascertaining the legislative intention and applying it, if lawful.

Additional proven facts are relevant and useful. Of the established ingredients, as stated, of eleomargarine, oleo oil, which is about one-half of the product, has naturally and in the market a color varying from a cream white through the lighter shades of yellow to a medium yellow; cottonseed oil has varying shades of yellow color and may be white or cream white only through an artificial process; cream has a color ranging from a cream white through the lighter shades of yellow; butter has a color ranging from cream white to the deep and dark shades of yellow. An expert witness defined the color " cream white " as yellow white or white having a tint of yellow. It follows, and the finding of the trial court is, that oleomargarine composed of established ingredients in natural conditions and colors and compounded in the usual and ordinary way has a yellow shade. It has a cream white color when oleo oil; cream and butter of that color and cottonseed oil artificially brought to that color are used. It is not within the findings of fact of the trial court or the evidence presented by the record that the light shade of yellow of the oleomargarine in question was caused by the selection or manipulation of the ingredients in it with the thought, purpose or intention of giving it the color of butter or any predetermined color. A finding of fact is that the resemblance of the oleomargarine to natural butter " was a resemblance in inherent qualities common to both butter and oleomargarine, and was not the result of any artificial means or selection employed in the manufacture of said oleomargarine."

Section 30 of the Agricultural Law contains definitions ap-

plicable in this case: " The terms ' butter ' * * * mean the products of the dairy, usually known by those terms, which are manufactured exclusively from pure, unadulterated milk or cream, or both, with or without salt * * * or coloring matter * * * . " Oleomargarine is an article " in the semblance of butter * * * not the usual product of the dairy, and not made exclusively of pure and unadulterated milk or cream, or any such article or substance into which any oil, lard or fat not produced from milk or cream enters as a. component part, or into which melted butter or butter in any condition or state, or any oil thereof, has been introduced to take the place of cream."

There is not needed now, after oleomargarine has for several decades been recognized by the Legislature and the courts as a wholesome, nutritious and economical substitute for butter, a review of the legislation and the judicial decisions interpreting it to demonstrate that the Legislature cannot absolutely prohibit the manufacture or sale of it (People v. Marx, 99 N. Y., 377; People v. Arensberg, 108 N. Y. 388; People v. Arensberg, 105 N. Y., 123; Schollenberger v. Pennsylvania, 171 U. S., 1), or to support the conclusion that the Legislature did not intend to prohibit it through the enactment of section 38. Indeed, other sections of article 3 of the Agricultural Law, of which section 38 is a part, disclose the affirmative legislative intention that it should be manufactured and sold, under regulative restrictions and requirements, to take the place of butter (secs. 39, 40, 41, 53, 54). We may therefore assert as, in effect, the attorney-general does, with clear confidence, that absolute prohibition was not within the legislative intention. The Legislature may, however, enact laws to prevent fraud and deception, to suppress false pretenses and promote honesty and disclosure in relation to the production and selling of articles of food (People v. Biesecker, 169 N. Y., 53; People v.

Girard, 145 N. Y., 105; People v. Luhrs, 195 N. Y., 377). The provisions we are considering were enacted under this legislative right. We think, however, that a shade of yellow given oleomargarine through the use of the recognized substantive ingredients in a natural and primary condition, identical, without predetermination or design, with a shade of yellow possessed by natural butter, does not effect, within the legislative intention or the purview of the statutory provisions, a deception or false pretense and is not prohibited.

The Legislature in its definition of olemargarine, already quoted, recognized the fact that it, as made from the known ingredients in a natural condition, would be " in the semblance of butter." They did not inhibit this mere semblance as a fraud or deception, inasmuch as they recognized and permitted its existence and the marketability of the oleomargarine of which it was an attribute. They did not require that in the manufacture of oleomargarine devices or means to make it distinguishable in appearance from natural butter be adopted. Whether such requirement, if prescribed, would be constitutionally lawful we do not now determine. While butter does not have a fixed and unvarying yellow color, it has, in commerce, a shade of yellow, natural or artificial, deeper and more pronounced than that of oleomargarine in a natural state. Some butter is of as light a shade of yellow as is some oleomargarine in a natural state, yet the shades of butter, generally and commercially speaking, are deeper and more varied. The fact that butter may lawfully be artificially colored facilitates such result. There is, therefore, in butter a range of shades of yellow accessible, as samples, to imitation by the manufacturers of oleomargarine. Imitation may be effected in either of two ways at least; the one, the use of artificial coloring matter which is not an essential ingredient, but serves the sole purpose

of achieving the imitated color; the other, the selection of the ingredients as to color and proportions, or both, with the predetermination and purpose of producing the imitated color. The purpose of section 38 was to forbid the use of either of these two ways or any other analogous way of causing oleomargarine to be in imitation or semblance of butter. It was not intended to and it does not prohibit in oleomargarine the semblance in color to butter which results not from imitation, but from a selection of ingredients dissociated with the design or intention to produce it. It does not compel the makers of oleomargarine to consciously choose the ingredients having a shade of color which will not produce that of butter.

The decision in People v. Arensberg (105 N. Y., 123, 103 N. Y., 388) carries us far toward such conclusions. In the Arensberg case the defendant was indicted for a violation of the statutory provisions here under consideration and which then were in section 7 of chapter 183 of the Laws of 1885. Originally and at the first trial he was convicted upon the mere finding of the jury that he sold oleomargarine; he was granted a new trial by us, we saying at that time: "But the guilt of the prisoner did not and could not lie in the simple manufacture and sale of the article, and depended upon the further inquiry whether it was manufactured in imitation or semblance of butter; whether by the use of ingredients not necessary or essential to the article itself it was sought to accomplish such imitation or resemblance" (p. 392), and stating that the question in a given case whether oleomargarine is or is not in imitation of butter is a question of fact (People v. Arensberg, 103 N. Y., 388. The second trial, in which proof was given that there was in the oleomargarine an ingredient solely to produce the color of butter, resulted in the conviction of the defendant, which was reviewed by us (People v. Arensberg, 105 N. Y., 123). We then held that the Legislature may constitutionally interdict

makers of oleomargarine from resorting to devices for the purpose of making their product resemble in appearance butter, and prevent the marketing of it in such a form and manner as to be calculated to deceive.   To the claim of the defendant that oleomargarine must from the nature of the ingredients resemble butter, and if the manufacture of it in imitation or semblance of butter is prohibited the manufacture of oleomargarine is made unlawful, Judge Rapallo, writing for the court, said: " We do not think that this result follows.   The statutory prohibition is aimed at a designed and intentional imitation of dairy butter, in manufacturing the new product, and not at a resemblance in qualities inherent in the articles themselves and common to both " (p. 130).   Judge Rapallo further said: " Such artificial coloring of oleomargarine for the mere purpose of making it resemble dairy butter comes within the statutory prohibition against imitation, and that such prohibition is within the power of the Legislature and rests upon the same principle which would sustain a prohibition of coloring winter dairy butter for the purpose of enhancing its market price by making it resemble summer dairy butter should the Legislature deem such a prohibition necessary or expedient " (p. 133).

A scrutiny of the evidence has not disclosed any evidence justifying the reversal by the Appellate Division of the findings set forth in the order of reversal.   Those findings were supported by uncontroverted evidence.

The order appealed from should be reversed and the judgment rendered upon the decision of the trial court affirmed, with costs in both courts to appellants.

CULLEN, Ch. J.; GRAY, WILLARD BARTLETT, HISCOCK, CHASE and MILLER, JJ., concur.

Order reversed, etc.