THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALBERT PETERSON, Appellant.

Agricultural Law — oleomargarine — law does not prohibit manufacture and sale of oleomargarine, unless made and sold by method designed to deceive public into purchasing it for dairy butter — when use of words " churned for table use " in label on package of what is stated to be oleomargarine, not a violation of the statute.

1. There is nothing in the Agricultural Law (Cons. Laws, ch. 1) which prevents the manufacture or sale of olemargarine unless made and sold as a designed and intentional imitation of dairy butter. The law does not attempt to prohibit or forbid the manufacture and sale

of oleomargarine as such, but aims at any method or act which may deceive the public into purchasing oleomargarine for the dairy product known as butter.

2. A substance, called nut margarine or butter, not manufactured exclusively from pure unadulterated milk or cream, but a mixture of vegetable oils and milk and a small percentage of benzoate of soda without artificial coloring or any attempt to imitate butter, was churned for a few minutes, rolled, salted, printed and wrapped in cartons for sale and delivery, the cartons containing no word of deception, but having printed thereon the following: " Nut Margarine; Coco-Nut Brand; Churned for Table Use; Free from Animal Fats; Oleomargarine; Contains 1/10 to 1% Benzoate Soda; The Nucoa Butter Company." *Held,* that the use of the words " churned for table use " in connection with a description which clearly states that the product is not dairy butter, is an honest statement and permissible, and can in no possible way deceive or mislead and hence it did not violate the provision of section 41 of the Agricultural Law which prohibits the manufacture of any oleaginous substance not made from pure milk or cream in imitation of butter and its sale under any label indicative of cows or the product of the dairy or under any terms indicative of the process in the dairy in making or preparing butter.

*People* v. *Peterson,* 189 App. Div. 926, reversed.

(Argued March 11, 1921; decided April 19, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 21, 1919, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court. A constitutional question has been raised as to the validity of section 41 of the Agricultural Law, as applied in this case.

*C. A. Pickard* and *H. V. N. Bodine* for appellant. The People failed to prove a cause of action. (*People* v. *Ginton,* 210 N. Y. 1; *People* v. *Arensberg,* 105 N. Y. 123.)

*Charles D. Newton, Attorney-General (C. T. Dawes* and *T. Paul McGannon* of counsel), for respondent.

CRANE, J. The Nucoa Butter Company, a corporation doing business at Soho Park in the state of New

Jersey, manufactured a product known as Nucoa Nut Margarine which had an extensive sale throughout the states. Treat & Oglivie, commission merchants in the city of Jamestown, New York, received a consignment of this substance which was distributed in cartons containing one, two or five pounds respectively to their various customers. The defendant, Albert Peterson, of Jamestown, bought some of these cartons of margarine from Treat & Oglivie and resold them in his store. For this sale, by the defendant, of a package of the nut margarine to agents of the department of agriculture on February 20, 1917, he has been convicted of violating the sections of the Agricultural Law (Cons. Laws, ch. 1), particularly section 41, and mulcted in a penalty of $75.

This substance, called nut margarine or butter, was not manufactured exclusively from pure, unadulterated milk or cream, but was a mixture of cocoanut oils, peanut oils and milk and 1/10 to 1% of benzoate soda. This mixture was churned six or eight minutes at a revolution of 120, crystallized by ice water, rolled, salted, printed and wrapped in cartons ready for sale and delivery. There was no artificial coloring used and no attempt made to imitate milk butter. The packages contained no word of deception, stating the product as it really was in the following language:

> " NUT MARGARINE
> " Coco-Nut Brand
> " Churned for Table Use
> " Free from Animal Fats
> " OLEOMARGARINE
> " Contains 1/10 to 1% Benzoate Soda
> " THE NUCOA BUTTER COMPANY."

It is conceded that no deception was attempted. The respondent claims that deception is no part of the cause of action against the defendant. All the statements made upon the carton are true; there is no claim that

they can possibly deceive any purchaser into believing that he is buying anything else than what is there stated. The offense, if any, is based entirely upon the use of the words " churned for table use." It has been held below that the use of these words in connection with the sale of any substance like oleomargarine or nut margarine is an offense irrespective of any attempt or possibility to deceive or mislead any one into believing that the churning applied to process in a dairy.

We are of the opinion that section 41 of the Agricultural Law has reference to the use of such words under circumstances leading purchasers to believe that the product comes from or is churned at a dairy and not to a case like this.

It will be noted at the outset that there is nothing in the Agricultural Law which prevents the manufacture or sale of oleomargarine. Section 38, which provides that no person shall manufacture the article known as oleomargarine in imitation or semblance of natural butter, has been held by this court to aim at a designed and intentional imitation of dairy butter. (*People* v. *Guiton*, 210 N. Y. 1.) In fact, this court held in *People* v. *Marx* (99 N. Y. 377) and *People* v. *Arensberg* (105 N. Y. 123) that the legislature could not prohibit the honest sale of oleomargarine. The United States Supreme Court on the other hand in *Powell* v. *Pennsylvania* (127 U. S. 678) and *Hammond Packing Co.* v. *Montana* (233 U. S. 331) has decided that the states may under certain conditions in the exercise of the police power forbid entirely the manufacture and sale of oleomargarine. The question is not now before us as the Agricultural Law does not attempt to prohibit or forbid the manufacture and sale of oleomargarine as such, but aims at any method or act which may deceive the public into purchasing oleomargarine for the dairy product known as butter.

In fact, section 40 permits the sale of oleomargarine by hotels and boarding houses with the use of the words

" oleomargarine used here," and section 41 provides that any person selling any oleaginous substance not made from pure milk or that is a substitute for butter shall pack it and mark it in certain ways therein prescribed and label it conspicuously " Oleomargarine."

The part of section 41 claimed to have been violated is in substance as follows, the words inapplicable being omitted by me: " No person manufacturing with intent to sell any substance in imitation of butter not made exclusively from milk or cream shall add thereto any substance whatever for the purpose of imparting a color resembling yellow, or any shade of yellow butter nor introduce any such coloring matter into any of the articles of which the same is composed. And no person selling any oleaginous substance not made from pure milk or cream shall sell them under any label indicative of cows or the product of the dairy nor use terms indicative of the process in the dairy in making or preparing butter."

Section 51 gives the object and intent of section 41.

" Section 51. Object and intent of this article.  *  *  * This article and each section thereof are declared to be enacted to prevent deception in the sale of dairy products, and to preserve the public health, which is endangered by the manufacture, sale and use of the articles or substances herein regulated or prohibited."

It is quite evident that the things prohibited by section 41 are to prevent deception or imitation, and that the use of terms indicative of process in the dairy must be made under circumstances and conditions tending to or likely to deceive. The prevention of deception is entirely unnecessary when the thing done or said can in no possible way deceive or mislead. The use of the word " churned " in connection with a description which clearly states that the product is not dairy butter is an honest statement and permissible.

The respondent inconsistently insists that the words " churned for table use " on the label of the nut margarine

packages were terms indicative of process in the dairy in making or preparing butter while at the same time admitting that they deceive nobody and could not mislead any purchaser into thinking that nut margarine is a product of the dairy or of unadulterated milk or cream.   In fact the respondent is forced to this admission by reason of the other words on the label.   The public is notified that the package contains nut margarine, oleomargarine, having 1/10 to 1% benzoate soda.

We are of the opinion that lacking an intent or possibility to deceive, the statements being true and leading to no misunderstanding or misconception, section 41 of the Agricultural Law has not been violated by the use of the word " churned."

The defendant was, therefore, not guilty of the offense charged and the complaint should have been dismissed.

The judgments of the Appellate Division and the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

Hiscock, Ch. J., Hogan, McLaughlin and Andrews, JJ., concur; Chase and Pound, JJ., dissent.

Judgments reversed, etc.