van Gestel, J.
The defendant Mary Schmidt as the Administratrix of the Estate of Ruth W. Freeman (“the Administratrix”) has moved for partial summary judgment dismissing Counts I, II, V, VI, VII and VIII of the plaintiffs Complaint. For the reasons that follow, the motion is denied with respect to Counts I and II, and granted with respect to Counts V-VIII.
BACKGROUND
This case involves, in part at least, a trust established in 1973 entitled The Julian S. Freeman Trust (“the Trust”) for the benefit of Ruth W. Freeman, wife of Julian S. Freeman (“the Wife”), his daughter, Reece Jane Freeman (“the Daughter”), and his son, Eliot Freeman (“the Son”). After Julian Freeman’s death in 1975, the Wife, along with the family attorney, Richard P. Houlihan, Jr., served as a Trustee of the Trust until her death in 1993.
The Complaint alleges a pattern of “imprudent, reckless and unauthorized transactions” resulting in payments and loans from the Trust to the Son which he used to finance real estate ventures that eventually soured with the market crash in the early 1990s. This left the Trust with approximately $2,960,000 of “assets” consisting of promissory notes for loans due from the Son and from development entities under his control. All of these obligations are and continue to be in default and the Trustees have brought suit against the Son for their collection. The remaining $2,145,000 of Trust assets are encumbered by liabilities of $2,370,000 representing funds the Wife and her co-Trustee borrowed in their fiduciary capacities to fund the loans the Trust made to the Son. The Daughter claims mismanagement of the Trust, including self-dealing and conflicts of interest, by the Wife (now deceased) and the family attorney.[1] The Daughter has sued the Administratrix of the Wife’s estate, seeking recovery from the estate for the Wife’s mismanagement as Trustee and more direct recovery from the Administratrix herself for actions offensive to the Daughter in the course of administering the Wife’s estate.
The Administratrix has moved for partial summary judgment on Counts I and II resulting from the activities of the Wife as Trustee, and on Counts V-VIII relating to her own actions as Administratrix of the Wife’s estate. The two clusters of counts present decidedly different factual and legal issues and will be discussed separately hereafter.
Counts I and II relating to the mishandling of the Trust point, among other things, to borrowings of $1,000,000 from Mechanics Bank of Worcester to pay off an indebtedness of one of the Son’s entities to Guaranty Bank and Trust Company in connection with property known as the Tapley Building in Lynn, Massachusetts and a $900,000 loan to the Trust by Goldman, Sachs, the proceeds of which were also made available to and utilized by the Son in his real estate ventures. It is alleged that the borrowing from Mechanics Bank enabled the Wife and Mr. Houlihan, the family attorney, to be freed of certain personal obligations as guarantors of the indebtedness to Guaranty Bank. It is further alleged that Mr. Houlihan himself was an'investor to the extent of $100,000 in the Tapley Building. There are additional allegations that the Trust invested in the aggregate $830,000 in undeveloped land acquired by the Son in West Boylston, Massachusetts.[2]
The defendant-Administratrix focuses on the Trust instrument, noting particularly the very broad powers granted to the Trustees in its management. The essence of that part of the motion dealing with Counts I and II revolves around the section of the Trust which deals with the rendering of accounts. Section VIII of the Trust provides in material part as follows:
VIII. Accounts. Commencing at such time after the death of the Grantor when the Trust has assets *304 valued at $100 or more, . . . the Trustees shall render annually to the . . . beneficiaries ... an accounting of the administration of the trusts hereunder .... Any such beneficiary, directly, or through his legal representative shall file with the Trustees written objections to any item of such account to which he objects within sixty (60) days of such mailing [of the account to him]. In the absence of such objection all beneficiaries, whether or not in being or assertained, shall be barred from objecting thereto." (Emphasis added.)
The administratrix contends that the failure by the Daughter to provide appropriate written objections to the several accounts bars her from recoveiy for any mismanagement alleged in Counts I and II. It is not disputed either that the Daughter received the accounts or that she never filed with the Trustees any written objections thereto. Her response, rather, is to the effect that the accounts themselves failed to adequately disclose the nature and extent of the Trustees’ mishandling of the Trust’s assets and, more particularly, the Trustees’ personal involvements and consequential conflicts in the Son’s real estate ventures.
The other cluster of claims, in Counts V-VIII, charge the Administratrix herself with misconduct in the administration of the Wife’s estate. The essence of these counts is: that the Administratrix, without first obtaining judicial approval, changed the locks on the home at 28 Montclair Drive, Worcester (which .was devised in the Wife’s will to the Daughter and Son) without prior notice, thereby barring the Daughter from her residence; that there exists a pattern of conflicts of interest by virtue of the Administratrix acting as both a Trustee of the Trust and Administratrix of the Wife’s estate; and, that the Administratrix is hostile to the Daughter.
In her response to these charges, and as the basis for seeking partial summary judgment thereon, the Administratrix points to a decision in her favor by the Worcester Probate and Family Court on a “motion” by the Daughter to have her removed as Administratrix. It is the position of the Administratrix that the facts that underlie Counts V-VIII have already been litigated and determined by the Probate Court, after a six-day trial, and should not again be tried in this case.
The Daughter contends that an appeal has been noticed in the Probate Court and therefore argues that the findings of fact in that litigation are not final. Further, the Daughter argues that the legal standards to be applied in determining whether to discharge an administratrix are different from those that apply to the allegations in Counts V-VIII. Therefore, the Daughter argues that the findings by the Probate Court are not binding or conclusive here. The findings of the Probate Court, which are attached as Exhibit E to the Memorandum in Support of the Motion for Partial Summary Judgment and are incorporated herein by reference, are detailed and can fairly be said to describe conduct not supporting the allegations in Counts V-VIII.
DISCUSSION Counts I and II
In assessing the efforts of the Administratrix to defeat Counts I and II, the Court reflects first on 166 years of Massachusetts trust law. The requirement that a trustee, regardless of the latitude granted to him in the trust instrument, must act in a manner consistent with that of the prudent man has been with us since the decision in Harvard College v. Amory, 9 Pick. 446, 461 (1830). “It is well established that ‘even very broad discretionary powers are to be exercised in accordance with fiduciary standards and reasonable regard for usual fiduciary principles.’ Old Colony Trust Co. v. Sulliman, ante, 6, 10." Briggs v. Crowley, 352 Mass. 194, 200 (1967).
“[A] court of equity may control a trustee in the exercise of fiduciary discretion if it acts beyond the bounds of a reasonable judgment or unreasonably disregards usual fiduciary principles, or the purpose of the trust, or if it fails to observe standards of judgment apparent from the applicable instrument.” Copp v. Worcester County National Bank, 346 Mass. 548, 551 (1964).In short, the lawis clear thatatrustee must exercise prudence in making each investment of trust property. Chase v. Pevear, 383 Mass. 350, 364 (1981). In the latter context, “in the exercise of reasonable and prudent discretion, trustees have an obligation to refrain from putting too much of the trust assets in one investment." Mazzola v. Myers, 363 Mass. 625, 635 (1973).
There is enough alleged in the allegations in Counts I and II to raise serious questions on the issue of whether the Trustees here were sufficiently “prudent” when they borrowed from Mechanics Bank and Goldman, Sachs and, in turn lent or utilized the borrowed funds for the benefit of the Son’s real estate ventures. There is, at least at this stage of this case, some evidence of a lack of prudence demonstrated by the default status of the Son’s several promissory notes to the Trust. Thus the real issue is whether the Trustees’ actions can be sheltered from further scrutiny at the Daughter’s behest because of her failure to provide written objections to the accounts rendered.
The law in Massachusetts is surprisingly sparse on the point in issue. No Massachusetts case has been cited by either side that,, in a non-probate trust, focuses on the effect of non-disclosure in accounts of conflicts or personal benefits to trustees. There are, however, cases involving probate trusts condemning the failure to disclose self-dealing by trustees, see e.g., Jose v. Lyman, 316 Mass. 271, 281-82 (1944), and O’Brien v. Dwight, 363 Mass. 256, 288-89 (1973), and cases pointing out that personal conflicts by trustees bring into play stringent rules against such self-dealing, see e.g., Jackson v. United States Trust Co., 360 Mass. 333, 338 (1972). In these latter circumstances, *305 accounts previously allowed by the Probate Court nevertheless have been reopened.
In the case before the Court, there are conflicting arguments by the Daughter and by the Administratrix of the estate of one of the Trustees as to whether the accounts rendered sufficiently put the beneficiaries on full notice such that any failure to object in writing would bar claims like those in Counts I and II. Indeed, the Daughter did make oral objections to some of the more recent accounts, thereby permitting an inference that she may, in fact, have had enough information from those accounts to enable her to do so.
A review by the Court of the accounts in issue and of the affidavit of the Daughter’s expert, Attorney Martin D. Turpie, a specialist in trust and estate law, suggests that important and material factual issues over the adequacy of the disclosures in the accounts exist such that the prophylactic effect of Section VIII of the Trust cannot be determined on the present motion. Consequently, the motion for partial summary judgment on Counts I and II must be denied.
Counts V-VIII
The issues raised by Counts V-VIII present a quite different legal posture in the face of the findings of fact by Judge Ricci in the Probate and Family Court. There is much to be said in favor of the Administratrix’s argument that two courts ought not be asked to determine the nearly identical set of facts. “A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." Fidler v. E.M. Parker Co., 394 Mass. 534, 539 (1985). See also, Martin v. Ring, 401 Mass. 59. 61 (1987). This Court has no difficulty in accepting Judge Ricci’s findings and applying them to the allegations in Counts V-VIII. The issue that still remains, however, is whether those facts are final or subject to being reversed on appeal. The Daughter urges, at a minimum, that the proceedings on this portion of the motion for summary judgment should be stayed pending the resolution of the appeal.
Again, the law offers little guidance. This Court, however, is of the view that whatever the results of the appeal from Judge Ricci’s determination, there is very little likelihood that her findings of fact — as opposed to her ultimate ruling on the case — will be overturned. It appears highly unlikely that the Appeals Court or the Supreme Judicial Court would determine that those factual findings were clearly erroneous. Simon v. Weymouth Agr. and Indus. Soc., 389 Mass. 146, 148 (1983); Mass.R.Civ.P. 52(a). This is particularly so when it is noted that the facts found do not seem to vary in any material way from the positions advocated in connection with this motion for summary judgment. It is the legal effect of the facts, not their correctness, that is in dispute on appeal. Thus, this Court will accept the facts as found by Judge Ricci and will not pursue a course that will permit them to be relitigated in this case.
Applying Judge Ricci’s facts to the allegations in Counts V-VIII this Court rules that the Administratrix’s conduct in connection with the administration of the Wife’s estate, particularly as it relates to the property at 28 Montclair Drive, Worcester, did not, as a matter of law, constitute a breach of her fiduciary duties, nor did it constitute an “illegal eviction,” a “conversion” or an intentional infliction of emotional distress. Partial summary judgment in favor of the defendant dismissing Counts V-VIII will be granted.
ORDER
For the reasons stated above, the defendant’s motion for partial summary judgment on Counts I and II is denied and on Counts V-VIII is allowed.

 Suit has been brought against the family attorney separately in the Superior Court in Barnstable County. Freeman v. Houlihan, Barnstable Superior Court No. 95-485.

 This property seems to have created a litigation history of its own. See Freeman v. Bldg. Insp. of West Boylston, 419 Mass. 548 (1995).