[Civ. No. 20928.   Second Dist., Div. Three.   Apr. 5, 1956.]

MIDGET PRODUCTS, INC. (a Corporation) et al., Respondents, v. W. C. JACOBSEN, as Acting Director of Agriculture et al., Appellants.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Appellants.

Milo V. Olson and Frank De Marco, Jr., for Respondents.

WOOD (Parker), J.—In this action for declaratory relief and injunction, the defendants appeal from judgment in favor of plaintiffs.

Plaintiffs intend to manufacture and sell a food product, which contains no milk or milk fat, and is known as Mel-O-Dee Whip Topping and also known as Mel-O-Dee Zert Topping. (For convenience, the Midget Products, Inc., will be referred to as the plaintiff.)   The product is intended for use by bakers, confectioners, and others as a topping for pies, cakes, sundaes, and other foods.   The Director of Agriculture of California is of the opinion that the product is an imitation milk product within the meaning of section 651 of the Agricultural Code[1]; that such product must be labeled under

[1] § 651, Agricultural Code: ''As used in this division, 'imitation milk product' means any substance, mixture or compound other than milk or milk products, intended for human food, made in imitation of, or having the appearance or semblance of, milk or any product thereof.''

section 654 of the Agricultural Code,[2] as an imitation milk product; that persons who sell and serve such product as food must, under section 655 of said code,[3] display a sign stating that imitation milk is used and served "here"; and that persons who manufacture the product and persons who sell the product must have licenses therefor under section 666 of said code.[4] Plaintiff sought declaratory relief with respect to issues in controversy between it and the Director of Agriculture, including whether the product was imitation milk, whether it had to be labeled as imitation milk, whether such a sign as referred to had to be displayed, and whether licenses were required. Plaintiff also sought an injunction restraining defendants from enforcing said sections of the Agricultural Code against plaintiff. Plaintiff also alleged that said sections are inapplicable as to plaintiff's product, and that if said sections are applicable thereto, those sections are unconstitutional.

Defendants (Acting Director of Agriculture, Chief of Bureau of Dairy Service, and an agent of the Department of Agriculture) alleged in their answer that it was their duty to enforce the statutes referred to in the complaint (Agricultural Code sections heretofore referred to and other sections of that code); that plaintiff's product is an imitation milk product as defined in section 651 of the Agricultural Code "in that it is a substance, mixture or compound other than milk or a milk product, is intended for human food, and is made in imitation of and having the appearance of and semblance of a product of milk, to wit: Whip Cream Topping

---

[2] § 654, Agricultural Code: "Each person, who manufacturers any imitation milk or imitation cream or imitation milk product, or any substitute that may be used as and substituted for milk, cream or evaporated milk, shall comply with the following: (a) The top . . . and the sides of each package, . . . shall have printed . . . thereon . . . the words 'imitation milk' or 'imitation cream' or 'imitation milk product,' . . ."

[3] § 655, Agricultural Code: "No keeper or proprietor of any bakery, hotel, boarding house, restaurant, . . . or any other place where food or drink is served to the public, . . . shall place before any patron or employee for use as food, any imitation milk or imitation cream or imitation milk product, unless there shall be displayed in a prominent place in each room therein where meals are served, a sign bearing the words: 'Imitation milk used and served here' or 'Imitation cream used and served here' or 'Imitation milk product used and served here' . . ."

[4] § 666, Agricultural Code: "It is unlawful . . . to engage in the business . . . of manufacturing, selling, dealing in or furnishing, . . . (a) imitation milk, (b) . . . (e) imitation cream, or (f) any other imitation milk product not otherwise listed herein, without first having applied for and obtained a license so to do. . . ."

as defined in Section 639 of the Agricultural Code''; plaintiff's product is made as a substitute for whip cream topping; defendants are informed and believe that plaintiff's product contains no milk or product of milk. Defendants also allege that said sections of the Agricultural Code are applicable to plaintiff's product, and that those sections are constitutional. Defendant Acting Director of Agriculture filed a cross-complaint in which he made substantially the same allegations that were made in the answer; and he sought therein an injunction restraining plaintiffs from manufacturing and selling said product.

The court found that plaintiff's product is a wholly nutritious blend of esculent ingredients containing no milk, milk fat, or product of milk. That the product is a blend of water, hydrogenated vegetable fats and nut fats, sucrose, vegetable protein, corn syrup, salt monoglycerides, diglycerides, stabilizer, artificial flavor and artificial color, none of which is a milk product. Plaintiff intends to sell said product in a chilled condition, packaged in containers of various sizes, primarily to commercial customers such as bakeries and confectioners. In the future he also intends to sell the product to the retail trade in liquid form and also in a pressurized container. A demand for a product such as plaintiff's exists, independently of price, from persons whose dietary needs and restrictions do not allow the consumption of milk. Plaintiff's product has certain advantages over any milk product; and, on the other hand, the product cannot serve all the needs served by a milk product. When compared with samples of milk products received in evidence, plaintiff's product had a distinctive appearance and texture. Plaintiff's product was more pink in color than a milk-product whip topping, and plaintiff's product withstood the heat and did not tend to deteriorate as rapidly as the whip topping made from milk. While plaintiff's product had the appearance of milk product, evidence disclosed that other products such as coconut milk, milk from soybean powder, and marshmallow paste also have the appearance of a milk product. Plaintiff's product can be, and it is intended to be, used rather than a milk product in certain types of food preparation. Plaintiff's intentions with respect to its product are honest. Plaintiff intends to label each container truthfully and each container will announce in conspicuous type that the product contains no milk or milk fat; and the ingredients of the product, as above given, will be set forth on the label. By reason of

such labeling and the distinctive appearance and texture, the public will not be defrauded and should not be confused when buying the product. The product is a product of plaintiff's inventive compounding, designed to be used as a dessert topping, or filling; and while it is a competing product with a product made of milk, it is not an imitation milk product but is a food compound singular and distinctive to itself. Plaintiff's product is not an imitation milk product and, although it may reasonably be said to have the appearance of a milk product, it does not come within a constitutional definition of imitation milk product. Section 651 of the Agricultural Code, insofar as it purports to classify as an imitation milk any substance other than milk or milk products, intended for human food and having the appearance of milk, is whimsical, arbitrary and unconstitutional, and would, if valid, legally define as an imitation milk product such substances as coconut milk, marshmallow cream, and soybean powder dissolved in water, no one of which is an imitation milk product. Plaintiff's product is not a whip cream topping as defined by section 639 of said code. The product may not lawfully be required to be labeled "imitation milk product." Persons manufacturing, dealing with, or having possession of the product, may not lawfully be required to have a license or to pay a fee or in any way to comply with sections 666, 667 or 668 of said code. Those sections do not apply to plaintiff's product. The product does not come within the purview of section 655 of said code, as constitutionally applied, and by reason of that fact persons who sell or serve such product may not lawfully be required to display a sign stating that imitation milk is used and served "here." That to apply said sections, or any of them, to said product so as to require it to be labeled an imitation milk product, or to require a person who manufactures or deals in it to have a license or to pay a fee, or to require a person who uses, serves, or sells it to display such a sign, would result in an unconstitutional application of said statutes and would thereby take property from plaintiff without due process of law in violation of the Constitutions of the United States and California; and would result in an unconstitutional restriction upon the business activities of plaintiff. Should plaintiff label its product an imitation milk product, and should persons who use or serve the product display a sign "imitation milk product used and served here," such labeling and such

sign would result in confusion and would be misleading to the public.

The judgment was that the product is not an imitation milk product; that said product is not an imitation product but is a food product of its own distinctive character and peculiar merits; that plaintiff proposes that the product will be sold in containers on which there will be a label that sets forth the ingredients of the product, and which label will state that the product contains no milk or milk fat; that in marketing and labeling the product in the manner so projected there will be nothing false or misleading to the public; that sections 639, 651, 654, 655, 666, 667, 668 and 676 of the Agricultural Code have no application to plaintiff's product; that said product need not be labeled an imitation milk product or be described as an imitation of any product of milk; that no person who sells the product need obtain a license so to do; that no person who serves or uses the product need display a sign bearing the words "imitation milk product used and served here"; that if any of said statutes were applied to the product, such application would constitute an unconstitutional and invalid application of said statute; the defendants, their successors, and their agents are enjoined (1) from prosecuting plaintiff or any other person for distributing, marketing, or selling plaintiff's product, and (2) from interfering with the distribution, use or sale of said product.

Appellants contend that plaintiff's product is an imitation milk product. They argue that the product is obviously meant to be a substitute for a milk product, namely, whipped cream or whipped cream topping; that plaintiff's product is a copy of a milk product, in that, whipped cream and plaintiff's product are emulsion of fat and protein—the only difference being that the origin of plaintiff's product is vegetable; that plaintiff, in order to further bring its product up to the standards of a milk product, intends to add vitamins to its product; the only factor in the case which presents any lack of similarity is the color—plaintiff adds a red coloring to give its product a pinkish cast; that since the evidence concerning the factors of similarity and use is without conflict, and since the trial court found that plaintiff's product has the appearance of a milk product and is intended as a substitute for a milk product, plaintiff's product is an imitation milk product as a matter of law.

Appellants cite *In re Reineger*, 184 Cal. 97 [193 P. 81], wherein Reineger was charged with selling imitation milk, namely, a compound composed of evaporated skim milk and 7.8 per cent of edible vegetable fat, without having obtained a license. A question therein was whether a statute was void by reason of uncertainty, which statute provided that no person shall engage in the business of selling imitation milk without first having obtained a license so to do, and that wholesale dealers shall pay a fee of $50 and retail dealers a fee of $5.00. The argument, with reference to uncertainty, was that a person could not determine, from the definitions of "wholesale dealer" and "retail dealer" in the statute, whether he was a wholesaler or retailer. Appellants herein quote from the cited case, page 104, as follows: "The proposition that a compound of this kind which is not milk, but which resembles milk, and which for many purposes may be used as a substitute for milk, is subject to reasonable regulations under the police power, designed to prevent it from being sold to consumers as real milk, is settled by the decision of the Supreme Court of the United States in *Hebe Co.* v. *Shaw*, 248 U.S. 297 [63 L.Ed. 255, 39 Sup.Ct.Rep. 125]." That case is distinguishable from the present case. The cited case involved a product which admittedly did contain a large percentage of skim milk, whereas the present case involved a product which, according to the findings of the trial court, did not contain any milk.

Appellants also cite *United States* v. *651 Cases, etc. Chocolate Chil-Zirt*, 114 F.Supp. 430, wherein questions were whether a certain product was imitation chocolate ice cream and whether it should have been labeled "imitation." That product contained "the usual ingredients of chocolate-flavored ice cream in approximately the same proportions, except that soy fat and soy protein are used therein in place of milk fat and milk protein." That product was labeled "not an ice cream" and "contains no milk or milk fat!" The court therein, which was a trial court, found that the product was imitation chocolate ice cream, and the court held that the product should have been labeled "imitation." That case is distinguishable from the present case, in that, in the present case the trial court found that the product involved here was not an imitation milk product.

In the present case, the evidence supports the finding that the product is not an imitation milk product, but it is a food product of its own distinctive character. The product

does not contain any milk or milk fat. The ingredients of the product will be listed on the label, and the label will state that the product contains no milk or milk fat. To require the plaintiff, by reason of said sections of the Agricultural Code, to label its product an "imitation" when it is not an imitation would be an unconstitutional application of said sections, and would be an unreasonable interference with plaintiff's property and business. (See *Brock* v. *Superior Court*, 12 Cal.2d 605, 610 [86 P.2d 805], stating that "a statute valid upon its face may be unconstitutionally applied.") It cannot be said as a matter of law that the product is an imitation milk product within the meaning of section 651 of the Agricultural Code.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.