[Civ. No. 18746.   First Dist., Div. Two.   Sept. 26, 1960.]

AERATION PROCESSES, INC. (a Corporation) et al., Respondents, v. W. C. JACOBSEN et al., Appellants.

Stanley Mosk, Attorney General, W. R. Augustine and E. E. Reynolds, Jr., Deputy Attorneys General, for Appellants.

Emil Steck, Jr., Maurice E. Hibbert and Nathaniel S. Colley as Amici Curiae on behalf of Appellants.

Brobeck, Phleger & Harrison, Richard Haas and R. S. Daggett for Respondents.

GOOD, J. pro tem.*—This is an appeal from a judgment enjoining the State Director of Agriculture and his subsidiary Bureau of Dairy Service, herein collectively referred to as the State, from enforcing various provisions of the Agricultural Code against a product manufactured by plaintiffs and sold under their trade name, being a dessert topping suitable for use on pies, cakes, sundaes et cetera. Respondents were plaintiffs below and, respectively, the owner of the trademark and licensee for its manufacture and sale in the San Francisco area. The product is sold to hotels, bakers, confectioners and like commercial establishments mainly in pressurized containers but some sales are made in liquid form to customers who have their own pressurizing containers and separately purchase the nitrous oxide gas for aeration. Its ingredients are soybean fat, cottonseed and coconut oils (20%) nonfat milk solids (7⅓%), stabilizers, water, sugar, vanilla. The percentage of water is not specified but it appears that the combined nonfat milk solids and water constitute 70 percent of the manufactured product.

The sections of the Agricultural Code involved herein are 651 defining an imitation milk product as "any substance, mixture or compound other than milk or milk products, intended for human food, made in imitation of, or having the appearance or semblance of, milk or any product thereof"; 653 defining imitation cream as any product made in imitation of or having the appearance or semblance of cream that contains an edible oil or fat other than milk fat; 654 requiring such products to be clearly labeled "imitation," etc.; 655 requiring hotels or other commercial establishments serving such products to the public to display a sign announcing such use; and 666 requiring both manufacturers and purveyors thereof to procure annual licenses therefor. The State was also enjoined from enforcing section 638 that with exceptions not here pertinent proscribes the manufacture or sale of any milk product to which any fat or oil other than milk fat has been added either under the name of such products or any fictitious or trade name.

Plaintiffs filed their action for declaratory relief and injunction wherein the basic contentions were (1) that their product

---

*Assigned by Chairman of Judicial Council.

was not an imitation milk or cream but a discrete food product formulated and sold as aforesaid and not subject to any of said sections of the Agricultural Code; and (2) that if applicable to their product said sections would be unconstitutional for various reasons. The State contended that the product was an imitation milk product and subject to the labeling and licensing requirements of said code; and that even if held not to be an imitation within the code definitions, its manufacture and sale would nevertheless be prohibited by section 638 aforesaid. At issue also was the question whether or not certain judgments of the Superior Court in Los Angeles County wherein injunctions were granted restraining the State from enforcing said code provisions against certain manufacturers of other but all-vegetable dessert toppings (No. 521006, *B. C. Whelan* v. *A. A. Brock, Director of Agriculture* and No. 597020, *Rich Products of California, Inc.*, v. *A. A. Brock, Director of Agriculture*) and the decision of this court in *Midget Products, Inc.* v. *Jacobsen,* 140 Cal.App.2d 517 [295 P.2d 542], were res adjudicata on the imitation as well as other issues.

Stipulations were reached at pretrial concerning many of the facts above stated as well as to the fact that the product was a wholesome and nutritious product truthfully labeled as to ingredients. The record also discloses that plaintiffs had originally manufactured the product with an all-vegetable formula using vegetable protein and stabilizers instead of the nonfat milk solids presently used; that such change had no effect on taste, texture or appearance of the product but was made in good faith and without fraudulent intent to avoid technical manufacturing difficulties, to produce a somewhat greater uniformity and stability, and because of economic advantages in costs and availability of the milk protein. By way of exhibits the court received in evidence various vegetable-oil toppings of the kind before the court in the above cited Midget Products case along with other food products containing combinations of dried milks and vegetable oils or fats such as cake mixes, canned cream soups, and white sauce. Whipped cream manually beaten in court as well as pressurized whipped cream topping defined by section 639, Agricultural Code (both being true cream but with different minimums of butter fat prescribed by law) were in evidence along with cream pies which, produced by major dairy products manufacturers, bore a decorative topping made with a formula

similar to the combination used by plaintiffs. Cream of wheat, lemon jello, garlic and onion powders, a golden vegetable shortening and other food products containing no milk proteins were also marked in evidence. All of these exhibits are readily available in the open market and none bear imitation labels. Throughout the trial the court and counsel freely remarked on various similarities and differences of color, taste, texture and use as between the various toppings.

The court made elaborate findings upon all issues in favor of plaintiffs' contentions. The findings note that though the color of whipped cream varied with different breeds of cows, it is generally yellow in appearance whereas the product in question is snow-white; that the product in question has a stiffer consistency and lower melting point than whipped cream and is sweeter in taste; that there is a difference in color, appearance, texture and taste between whipped cream and the product in question and that it is difficult to see "how one product could be 'palmed off' on the public under the guise of being the other"; that the product is not imitation cream nor an imitation of anything but is a singular and distinctive food product having its own particular merits and advantages; that it is identical in use, appearance and semblance to rival all-vegetable-oil toppings as well as the toppings of cream pies above mentioned. ▉ The finding that is subject to the brunt of attack on this appeal is as follows: "3. 'Instantwhip Topping' is not made in imitation of milk or any product thereof, and . . . is not an imitation milk product, although it does come within the definition of an imitation milk product as set forth in Section 651 of the Agricultural Code."

The State argues that the findings are entirely without support in the evidence and that finding three is inherently contradictory. It also contends that it was prejudicial error to receive in evidence the food products that were patently not imitation milk products because, quite aside from the constitutional questions, it contends that the findings as to nonimitation were predicated on a comparison of the product in issue with all-vegetable toppings and its similarity thereto rather than upon its similarity to pressurized whipped cream topping, a true cream product.

▉ Imitation is a question of fact not tested by appearance alone but by many factors such as taste, smell, texture, consistency, melting points and use. The test is not the presence or absence of any one element of similarity but the

composite effect of all of them. (*62 Cases of Jam* v. *United States*, 340 U.S. 593 [71 S.Ct. 515, 95 L.Ed. 566]; *United States* v. *651 Cases etc. of Chil-Zert*, 114 F.Supp. 430.)

Because the question is one of fact, this court is bound by the rule that if there is substantial evidence to support a finding by the trial court it must be sustained despite conflicting evidence. (*Smith* v. *Bull*, 50 Cal.2d 294 [325 P.2d 463].) Such evidence was present in the trial court. Difference in texture of plaintiffs' product from that of both true whipped cream and pressurized whipped cream topping was acknowledged by appellant Ghiggoile on the the stand; difference in taste and the more yellowish color of pressurized whipped cream topping along with the former's greater stability and higher melting point were also noted. It is true that there is some confusion in the record arising from the fact that both the manually whipped cream and pressurized whipped cream topping were, according to the testimony, true cream products but some sequences of testimony as well as judicial comment at the trial require clarification by transcript reference *ante* or *post* to determine which cream product was the subject of a particular question or comment. The words "whipped cream" were sometimes used without discriminating between the two products both at the trial and in the findings. However, in view of the implication in the testimony that the only difference between them was that of butter fat content and method of aeration, it is our opinion that the uncertainty is not fatal to the finding of a "difference in color, appearance, texture and taste between Instantwhip Topping and whipped cream." It may further be noted that early in the case appellant Ghiggoile admitted that the plaintiffs' product was not an imitation cream and the trial then proceeded upon the theory that the issue was whether or not the product was an imitation milk product.

In view of this confusion of terminology, the rules requiring a reasonable construction of findings and the resolution of inconsistencies to support the judgment (48 Cal.Jur.2d, p. 317) fully justify the interpretation of the term "whipped cream" in the findings to include pressurized whipped cream topping. As so read, the findings do point out the differences between plaintiffs' product and pressurized whipped cream that we have mentioned above. While the court did comment on certain similarities of decorative effect and duplicate uses, no antecedent expression of a trial judge whether casual or in a formal opinion may be used to impugn his final opinions ex-

pressed in the only manner prescribed by law, i.e., by the findings of fact and conclusions of law. (*Bratovich* v. *Bratovich*, 179 Cal.App.2d 420 [3 Cal.Rptr. 735].) It must be noted that there was evidence present that many food products (cake mixes, Golden Fluffo, toppings of the kind ruled upon in the Midget Products case, etc.—even cream of wheat) do have an "appearance and semblance" of milk products but are not within the meaning of section 651 aforesaid, although if the section is read disjunctively "appearance and semblance" would be sole determinative factors. Other findings of the trial court clarify the meaning of the somewhat unnecessary reference. As so understood the finding is not inconsistent in itself or with the other findings. ▮ Further, as appearance is one of the factors of evidence relevant to the issue of imitation, the admission of the various food products which appellant claims to have been erroneous was proper.

▮ Essentially the question that is determinative of the major issues involved herein is whether or not there is evidentiary support for the court's finding that plaintiffs' product is a separate and distinct food product and not a milk product at all. The question may be restated: Does the substitution of nonfat milk solids to the extent used by plaintiffs change the essential character of the product and make it a milk product, thus taking it out of the category of the toppings ruled upon in the Midget Products case? The evidence shows that the product in question cannot be whipped manually and is unusable in its liquid state for any of the purposes that milk or cream is so used; that when aerated it is indistinguishable in appearance, texture and taste from the Midget Products kind of topping; and, as discussed *ante,* differs from pressurized whipped cream toppings. There is also evidence that such nonfat milk solids are a surplus product of the dairy industry used in many separate food products that may or may not contain vegetable fats or oils and are not classified as milk products. There is a point in manufacturing processes when an end result, though in itself it may be a milk product, reaches a stage wherein its use in other and recognizedly distinct categories of food will not transform the essential nature of the latter into a milk product. Such use in various package mixes and prepared foods was acknowledged by the State and the separate nature of such products (with particular reference to cream pies) was the reason given for the State's failure to attempt enforcement of the particular sections of the Agricultural Code against the manufacturers thereof. Such reason-

ing is valid. Upon this theory the finding of willful discrimination and selective enforcement by the State is not sound. However, in view of the evidence detailed above the finding that the subject product was not an imitation milk but a singular and distinctive food product is supported by substantial evidence.

■ The State argues that the admixture of nonfat milk solids with water for use with the vegetable fats and oils that are the base of the compound produces "reconstituted skim milk" and that *as a matter of law* the resulting compound, regardless of characteristics or category, is a milk product to which vegetable fats or oils have been added in violation of section 638 of said code. But "skim milk" is defined by section 626 thereof as "the product resulting from the complete or partial removal of milk fat from milk" and is obviously the liquid remaining after such removal. While we are in accord with the State's argument that it is a distinction without a difference to make the application of section 638 depend upon whether vegetable oils are added to milk products or vice versa, the argument is irrelevant if the resulting product is not a milk product, imitation or natural. The mere reading of section 638 discloses that it does not apply to food products other than milk products manufactured or sold as such.

Neither the Los Angeles cases nor the Midget Products case involved section 638 of the Agricultural Code because of the difference in composition of the products there at issue. Respondents' contentions that those cases are res adjudicata are therefore unsound. Respondents' interest in the result of this litigation is substantially the same as that of the topping manufacturers involved in the other litigation and would accordingly satisfy the privity requirement of the rule that a party may not reopen adjudicated issues merely by switching adversaries. But that rule cannot be applied where a judgment rests upon substantially different factual or legal issues. The Midget Products case is not directly controlling in favor of the contentions of either party. It does, however, support the rules that whether something is an imitation milk product is a question of fact and that mere "semblance and appearance" are not sufficient in and of themselves to constitute a product an imitation milk or cream. If the categorization of vegetable-oil toppings as separate and distinct food products even though used where whipped cream had theretofore been used as established by the Midget Products case is sound, it follows that section 638 does not apply to the subject product.

Because the essential findings as to nonimitation and inapplicability of section 638 are supported by evidence the court's findings upon the constitutional questions are surplusage as are those portions of the judgment declaring the unconstitutionality of said code sections either conditionally by reason of their application to the particular product or of discriminatory enforcement by the State. It is accordingly ordered that the judgment be modified by striking therefrom paragraphs three and four declaring the particular code sections unconstitutional and holding the State officers involved to be knowingly and intentionally guilty of unequal and discriminatory enforcement against plaintiffs in favor of segments of the dairy industry.

As so modified, the judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.