[Civ. No. 30639. First Dist., Div. Three. Nov. 6, 1972.]

TIP TOP FOODS, INC., Plaintiff and Appellant, v.
RICHARD LYNG, as Director, etc., et al., Defendants and Appellants.

536

## COUNSEL

Evelle J. Younger, Attorney General, Sanford N. Gruskin, Assistant Attorney General, and Roderick Walston, Deputy Attorney General, for Defendants and Appellants.

Watson, Hoffe & Fannin, Watson & Hoffe, Francis A. Watson, Jr., and Joseph E. B. Gaudet for Plaintiff and Appellant.

## OPINION

CALDECOTT, J.—On February 5, 1969, plaintiff and cross-appellant[1] Tip Top Foods, Inc., commenced this action for injunctive and declaratory relief, seeking to restrain defendants from enforcing a cease-and-desist order, and seeking to have a number of sections of the California Agricultural Code declared unconstitutional. Named as defendants were Richard Lyng, as Director of Agriculture of the State of California; R. L. Van Buren, as Chief of the Bureau of Dairy Service of the Department of Agriculture of the State of California; and P. J. Benedetti, as Regional Administrator of the Bureau of Dairy Service of the Department of Agriculture of the State of California. (Hereinafter referred to as the State.)

This action challenges the constitutionality of several sections of the Agricultural Code of the State of California, relating to regulation of "products resembling milk products."[2] The trial court found certain of these challenged sections to be unconstitutional, but found the remainder of the Act constitutionally valid. Both sides have appealed.

The facts are not in dispute. The plaintiff is Tip Top Foods, Inc., a manufacturer of three food products: "Sour C," "Hi-Lo" and "Pantry Pride." As plaintiff notes, " 'Sour C' and 'Hi-Lo' are similar products. Both are all-purpose dressings for use in such foods as fruits, salads and baked potatoes, for use in the preparation of other dressings and for use in cooking. Each of these products is a pasteurized, cultured blend of water, nonfat dry milk solids, vegetable fats and small amounts of food chemicals. The main difference between the two products is that 'Hi-Lo' has a lower vegetable fat content than does 'Sour C.' Both products use a partially hydrogenated soybean oil as a fat source. Each of the two products is sold to commercial establishments or institutions in the food industry. In addition, 'Sour C' is sold in retail stores. 'Sour C' is a registered trade mark which is held by plaintiff.

" 'Pantry Pride' is sold only in the commercial institutional trade for cooking and baking and the manufacture of other food products. This product is a pasteurized blend of water, nonfat dry milk solids, vegetable fats and small amounts of food chemicals. 'Pantry Pride' does not reach and is not consumed by the public in its original form." "Pantry Pride" is in beverage form and uses a fully hydrogenated coconut oil as a fat source.

---

[1] Both parties have appealed.

[2] The legislation here under consideration was passed in 1968, and is found in the Statutes of 1968, chapter 1250. This opinion, however, will not use that term but will instead refer to the legislation as the "Act." Most of the sections appear in Agricultural Code section 38901 et seq., entitled "Products Resembling Milk Products." All code section references are to the Agricultural Code unless otherwise noted.

## *Is section 38904 constitutional?*

██ The trial court found section 38904 to be unconstitutional. That section provides: "Except as provided in this section, no products resembling milk products[3] shall be used in any of the charitable or penal institutions that receive assistance from the state. If the state is informed in writing that government holdings of milk or milk products cannot be purchased or acquired by the state, the Department of General Services may purchase for use in state institutions such products if requested to do so by the director of the department which has control of any state institutions for which such product is intended."

██ In matters not involving First Amendment rights, the test of the validity of an exercise of the police power[4] is its reasonableness in relation to the objective of the legislation. (*Adams* v. *Shannon,* 7 Cal.App.3d 427 [86 Cal.Rptr. 641], and cases cited therein.) But the court will not substitute its judgment for that of the Legislature, and if reasonable minds might differ as to the reasonableness of the regulation, the law will be upheld. (*Daniel* v. *Board of Police Commissioners,* 190 Cal.App.2d 566, 571 [12 Cal.Rptr. 226]; *Burk* v. *Municipal Court,* 229 Cal.App.2d 696, 700 [40 Cal.Rptr. 425].) ██ Nevertheless, " 'Reasonable regulation' implies that the regulatory objective is the welfare of the general public as contrasted with that of a special class or segment. [Citation.] The law must not be arbitrary; it must rest upon 'adequate reason.' [Citation.] If the general objective of the law is within the state's regulatory power, its individual provisions must have a 'real and substantial relation' to that objective. [Citations.]" (*Doyle* v. *Board of Barber Examiners,* 219 Cal.App.2d 504, 510 [33 Cal.Rptr. 349].) In short, in order to determine the constitutionality of a police power statute, the court must first look at the purposes of the regulation, and secondly, must ascertain whether the statute in question is related in a reasonable fashion to those purposes.

██ The purposes of the Act have been set out clearly by the Legislature in section 38902, which provides as follows: "The Legislature further finds and declares all of the following: (a) There is an increasing advent into the marketplace of food products which in appearance, taste and other

---

[3]The term "Products resembling milk products" is defined in section 38912 as ". . . any food product for human consumption, except those referred to in section 38903, which has the appearance, taste, smell, texture or color of a milk product and which, taken as a whole, bears resemblance to a milk product, or could be mistaken for a milk product."

[4]Section 38901 provides in part: "The provisions of this chapter are enacted in the exercise of the police powers of this state for the purpose of protecting the health, safety, and welfare of the people of this state."

physical characteristics resemble milk products, which are frequently mistaken by consumers for milk and milk products, which are used for the same or similar purposes as milk and milk products, which are frequently manufactured, transported and sold in the same places as milk and milk products, which are frequently packaged in the same types, sizes and shapes of containers as milk and milk products, which are suitable media for the growth and multiplication of micro-organisms; but which food products contain fats and oils other than milk fat in combination with milk products or contain no milk products. (b) It is necessary in order to prevent and avoid false, misleading and deceptive marketing of such products resembling milk products, and in order to prevent deception and confusion among consumers, and in order to protect public health, that this chapter be enacted, and that the director from time to time promulgate regulations governing the labeling, identification and sanitary production of all such products."

Tip Top Foods argues that section 38904 seeks to impose no regulations at all dealing with the information, health or safety of prospective consumers, and is therefore void according to the above principles. We agree with this contention. Prohibiting the use of products resembling milk products in the charitable or penal institutions which receive assistance from the state cannot possibly be said to have any reasonable relation to the prevention of deceptive marketing or the prevention of confusion among consumers. (In accord; *Coffee-Rich, Inc.* v. *Fielder,* 27 Cal.App.3d 792 [104 Cal.Rptr. 252].) These goals might be accomplished through regulation of marketing and labeling practices, but to prohibit the use of products resembling milk products by certain classes without any apparent or imaginable reason is wholly arbitrary and capricious.

The state argues that it "should be permitted to select food products that it considers nutritionally superior to other such products, even though the latter are sufficiently nutritious to be sold on the open market." However, it is quite apparent that the statute has no relation whatever to this goal, since even without the statute the state could still exercise its discretion to select those products which it considers nutritionally superior.

Nor does section 38904 have any relation to public health. The state concedes that the products "are sufficiently nutritious to be sold on the open market," and the statute provides that products resembling milk products may be used when "government holdings of milk or milk products cannot be purchased or acquired by the state, . . ." There is no indication whatsoever that plaintiff's products are unhealthful; and even if they were, this statute does not serve to correct that condition.

While Tip Top Foods states that "[i]t is obvious that the prohibition is designed only to make a market for dairy products and for no other purpose whatever," we need not reach this contention, since the above reasons are sufficient to sustain the trial court's finding of unconstitutionality.

### Is section 35191 constitutional?

■ The trial court found section 35191 to be unconstitutional. That section provides: "Every person that manufactures or imports any oleomargarine or margarine, or any substance designed as a substitute for butter, or that resembles butter, which is not made wholly from pure milk or cream, or any product resembling a milk product, shall keep a record, which gives the quantity that is sold or purchased, the name and location of the seller and purchaser, the date, and the place to which it was shipped or delivered." We are unable to find any constitutional infirmity in such a requirement. One of the purposes of the Act is to protect the public health. (§ 38902.) The state points out that the purpose of the record-keeping requirement is to enable the distribution of a particular product to be traced and recalled, should it occur that a particular batch of a product is defectively manufactured. Thus viewed, the record-keeping requirement is reasonably consistent with the state's purpose in protecting public health.

Tip Top Foods contends in its brief that the statute is unreasonable because it would require the housewife checking out groceries from a store to stop and give her name and address when purchasing "Sour C." Tip Top Foods, however, has misread the statute. The record-keeping requirement is imposed on "Every person who manufactures or imports . . . any product resembling a milk product." Thus the manufacturer, or importer, of a product resembling a milk product is the only person or entity required to keep the records. The only records that he must keep are with respect to "the name and location of the seller and purchaser, the date, and the place to which it was shipped or delivered." Clearly the statute only contemplates the keeping of records concerning the name et cetera of the manufacturer's immediate purchaser commonly, the wholesaler; or if the person imports products, the name et cetera of the person from whom he imports and the person to whom he sells. The statute does not require the keeping of records of customers of retail purchasers.

Finally, the statute does not deprive Tip Top Foods of equal protection, since it appears that the producers of products which are milk products must comply with more greatly detailed record-keeping and reporting provisions. (E.g., § § 61441-61444, 62581, 62582, 62712, 62714.)

■

*Are the labeling restrictions of sections
38952 and 38956 constitutional?*

■ These two challenged sections contain restrictions as to what may appear on the labels of Tip Top Foods' products. The trial court found both sections unconstitutional. Section 38952 provides: "Each container which contains a product resembling a milk product, other than an imitation milk product,[5] shall be labeled with the name and address of the manufacturer or distributor, and the names of the ingredients contained in such product. Such product shall be labeled with a fanciful or brand name only, but the list of ingredients of a filled product[6] shall contain the statement that the product is a 'filled product,' and the list of ingredients of a nondairy product[7] shall contain the statement that the product is a nondairy product. Such information shall appear conspicuously upon the label of the container, in a manner established by the director through regulation. In addition, the director may, by regulation, require any other information to be included on the label which the director determines to be in the public interest." The trial court found the second sentence of this statute to be unconstitutional, apparently because "[l]abels of all other foods are required under state and federal law to be described by their common or ordinary names, if any." Apparently the most objectionable part is the requirement that the product be labeled with a "fanciful or brand name only"; Tip Top Foods argues that this section would not permit it to describe what its products are or their use. The question presented is whether the requirement that products be labeled with a fanciful or brand name *only* means that no additional information can be included on the label, other than the information specifically required in section 38952.

---

[5]"Imitation milk product" is defined by the following two sections: " 'Imitation milk product' means a product which contains oils or fats other than milk fat in combination with a milk product, and which complies with the provisions of this chapter governing imitation milk products." (§ 38914.) "An imitation milk product shall contain not less than the same percentage of milk solids not fat, and not less than the same percentage by weight of edible oils or fats, as milk solids not fat or milk fat, or both, are required by this code, or by any regulations thereunder, for the milk or milk product imitated. Any such imitation milk product may contain emulsifiers and stabilizers in a maximum percentage not to exceed six-tenths of 1 percent emulsifiers or stabilizers, or both, or in such other maximum percentage as may be established from time to time by the director through regulation duly issued. Except for such emulsifiers and stabilizers, and for such fat or oil other than milk fat, an imitation milk product may not contain any ingredient other than an ingredient permitted in the milk or milk product imitated." (§ 38921.)

[6]" 'Filled product' means a product resembling a milk product, other than an imitation milk product, which filled product contains oils or fats other than milk fat in combination with a milk product." (§ 38913.)

[7]" 'Nondairy product' means a product resembling a milk product, but which nondairy product contains no milk or milk solids." (§ 38915.)

The Attorney General contends that "[t]he labels of products resembling milk products may contain any statement or reference that is not misleading," citing section 38954.[8] On reading these two sections together (§ § 38952 and 38954), we agree with the Attorney General's interpretation and hold that the labels may contain additional information as long as it is reasonable, relevant, truthful, complete, and not deceptive or misleading. The provision that "[t]he director may require satisfactory proof of the compliance of any statement with the provisions of this section," is also constitutional.

Tip Top Foods also claims that the requirement of the statute that the list of ingredients contain the statement "filled product" or "nondairy product," depending into which classification the product falls, is unconstitutional. The definitions of "filled product" and "nondairy product" merely are categorizations of the product which depend on the presence or absence of a milk product therein. A "filled product" contains oils or fats other than milk fat in combination with a milk product (§ 38913), and a "nondairy product" contains no milk or milk solids. (§ 38915.) The placing of these designations on the carton is, at present, probably meaningless to the consumer and is perhaps superfluous since the manufacturer is required by section 38952 to list on the label the names of all the ingredients contained in the product. Such a requirement, however, is not unconstitutional. As these terms become better known to consumers they will aid in the identification of the products and as such constitute a lawful exercise of the police power.

Tip Top Foods further claims that the requirement that a fanciful or brand name be used deprives the potential purchaser of information concerning the nature of the product. There is no evidence here that the products involved have a generic or common name. In fact, newly fabricated products probably have not acquired a common name and by necessity will be known by a fanciful or brand name, as these products are. Common or generic words such as "milk" or "cream" could not be used, regardless of this limitation, as they would be deceptive. The fear that the potential purchaser will lack information as to the nature of the product is misplaced as the label can describe the product within the limits of section 38954.

---

[8]Section 38954 provides: "Labels of products resembling milk products may contain references and comparisons of the products with milk products as long as such statements are reasonable, relevant, truthful, complete, and not deceptive or misleading. The director may require satisfactory proof of the compliance of any statement with the provisions of this section."

■ Tip Top Foods' final attack on section 38952 concerns the provision in the last sentence permitting the director through regulation to require any information on the label which he determines is in the "public interest." Tip Top Foods' argument is that this is void for being an invalid and overbroad delegation of legislative power to an administrative agency. However, in view of the well-recognized principle that a statute must be construed to avoid unconstitutionality if it can reasonably be so interpreted (*Long* v. *City of Anaheim,* 255 Cal.App.2d 191, 199 [63 Cal.Rptr. 56]; *Baldwin* v. *City of San Diego,* 195 Cal.App.2d 236, 240 [15 Cal.Rptr. 576]), we must interpret the director's discretion to determine the "public interest" as being limited to promulgating reasonable labeling regulations consistent with the statutory purposes of preventing deceptions and protecting public health. Thus construed, the delegation is valid. *Banzhaf* v. *F. C. C.* (1968) 405 F.2d 1082, 1096-1097 [132 App.D.C. 14], is distinguishable in that it involved sensitive First Amendment issues, none of which are involved in the present case.

Therefore, since the delegation is valid, the regulation challenged by Tip Top Foods (Cal. Admin. Code, tit. 3, § 471, subd. (b))[9] which appears to be reasonable in its relation to public health, is likewise valid. We find section 38952 to be constitutional.

■ The second of the two labeling regulations determined to be unconstitutional by the trial court was section 38956, which reads as follows: "Trade products[10] containers and labels shall not contain any combination of words, symbols, marks, designs, or representations commonly used or associated with the sale, advertising, or distribution of milk products. The labels shall not contain statements regarding milk products except those permitted by Section 38954[11] and any necessary factual statement regarding any ingredient milk products." Tip Top Foods argues that the language "commonly associated with the sale, advertising, or distribution of milk products" is vague, overbroad, and therefore constitutionally void. ■ It

---

[9]The regulation provides: "The term 'filled product' or 'non-dairy product' shall be followed by a list of ingredients in the descending order of predominance in a type at least one half as large as the term 'filled product' or 'nondairy products,' as the case may be. The source of the oil or fat shall be identified and if a blend, the source of the oils or fats shall be listed in the descending order of predominance. If the oil or fat has been hydrogenated, the fact shall be stated."

[10]"Nondairy products and filled products are collectively referred to in this chapter as 'trade products.'" (§ 38916.)

[11]Section 38954 provides: "Labels of products resembling milk products may contain references and comparisons of the products with milk products as long as such statements are reasonable, relevant, truthful, complete, and not deceptive or misleading. The director may require satisfactory proof of the compliance of any statement with the provisions of this section."

is established that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. (*Wotton* v. *Bush,* 41 Cal.2d 460 [261 P.2d 256]; *A. B. Small Co.* v. *American Sugar Refining Co.,* 267 U.S. 233 [69 L.Ed. 589, 45 S.Ct. 295].) On the other hand, reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible. (*In re Newbern,* 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *Ali,* 66 Cal.2d 277, 280 [57 Cal.Rptr. 348, 424 P.2d 932].) A statute will not be declared void as being indefinite if it contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combated in language giving fair notice of the practices to be avoided. (*People* v. *Hallner,* 43 Cal.2d 715, 720 [277 P.2d 393]; *People* v. *Holstun,* 167 Cal.App.2d 479, 488 [334 P.2d 645]; *People* v. *Deibert,* 117 Cal.App.2d 410, 418 [256 P.2d 355].)

While the artfulness and precision with which this statute was drawn leaves much to be desired, we must construe the statute as being constitutional if at all possible. The only constitutional reading of the statute is to construe it, in accordance with the stated goals of the legislation, as prohibiting only those words, symbols, marks, designs, or representations that are peculiar to milk products, and that are reasonably likely to result in deception and confusion among consumers. The statute does contain a reasonably adequate disclosure of the evil to be avoided, and we must presume that the Legislature intended only to prohibit deception and did not intend to prohibit that which does not tend to deceive. Given this built-in limitation on the statute's scope, we find it constitutional, even though the statute on its face could be read to prohibit the use of non-deceptive terms. *Market Basket* v. *Jacobsen,* 134 Cal.App.2d 73 [285 P.2d 344], held that the word "place" in the following statute (then Agr. Code, § 580) was overly vague and hence unconstitutional: " 'Imitation ice cream or imitation ice milk shall not be manufactured, processed, frozen, handled, distributed or sold in any place where ice cream or ice milk is manufactured, processed, frozen, handled, distributed, or sold.' " The court held "place" to be too vague and indefinite, since there was no indication whatsoever whether it meant in the same store, in the same locality, in the same building, or any other of numerous possible meanings for the word. In so holding, the court stated that "[t]he inevitable result of the use of such a vague, uncertain, ambiguous term as 'place' in section 580 is to force the citizen to guess at what the law proscribes." (*Id.* at p. 81.) In the instant case, however, there is little doubt as to the meaning of the Legislature in enacting section 38956, and the manufacturer does not have to guess what the law proscribes. From a reading of the Act as a whole, it

is clear that the Legislature intended to prohibit the use of those representations upon the labels of products resembling milk products which are associated in consumers' minds with milk products. Of course, there are many words, symbols, marks, designs, and representations which are commonly associated with the sale of milk products, but which are also commonly associated with the sale of many other products; e.g., date stamps, the use of the word "fresh," the word "drink," and so forth. However, these terms are not peculiarly associated with milk; and in prohibiting deceptive practices, the Legislature could not have possibly intended to prohibit the use of these terms. Read in this manner, the statute gives enough warning of the practices it was designed to prohibit, so that "men of common intelligence" do not have to guess at its meaning.

### Is section 38903, subdivisions (b) and (e) constitutional?

 Section 38903 in part provides: "The provisions of this chapter do not apply to: . . . (b) A distinctive proprietary food compound which complies with all of the following requirements: (1) Not readily mistaken in taste for milk, or for evaporated, skim, condensed, or dried milk. (2) Prepared and designed for feeding infants and young children. (3) Sold exclusively by druggists, orphanages, child welfare associations, hospitals, and similar institutions or for shipment outside of this state. . . . (e) Any product resembling a milk product which resembling product is subjected to a temperature high enough to sterilize the product and is packaged in an hermetically sealed container." The trial court found these provisions to be constitutional. Tip Top Foods argues that these sections are a denial of equal protection, in that there is no rational basis for distinguishing between its products and the products exempted from the applicability of the provisions of the Act. We find little merit in this argument.

The standard against which an alleged violation of equal protection is measured was stated clearly in *Werner* v. *Southern Cal. etc. Newspapers,* 35 Cal.2d 121, 131 [216 P.2d 825, 13 A.L.R.2d 252]: "A classification is reasonable, however, only if there are differences between the classes and the differences are reasonably related to the purposes of the statute." The products falling under subdivision (b) of the statute differ from Tip Top Foods' products in that they are not likely to be mistaken for milk products; and the products falling under subdivision (e), unlike Tip Top Foods' products, are not subject to bacterial contamination. These differences between the classes are reasonably related to the purposes of the statute, since Tip Top Foods' products may under certain circumstances both be mistaken for milk products and be contaminated or spoiled by bacteria. Thus the trial court was correct in finding these questioned sections constitutional and not violative of equal protection.

*Is the registration requirement of section 38941 constitutional?*

■ Section 38941 provides as follows: "Any person engaged in the manufacture of products resembling milk products, shall register the products with the department as provided by this article."

Tip Top Foods argues that since there is no similar registration requirement for other food products, the section is clearly a violation of equal protection. This contention is without merit, since if the Department of Agriculture is to have authority to regulate the contents of the labels on products resembling milk products, at least within the boundaries discussed above, the Legislature is well within its police power in requiring plaintiff's products to be registered with the department. Other sections provide that the registration application shall include the ingredients of and the proposed label for a product (§ 38942), and that a product may not be sold unless it has registered and paid the registration fee (§ 38944) of five dollars (§ 38943). These provisions are reasonably related to the stated and permissible goals of the statutory scheme, and as such are proper and constitutional. The fact that some other food manufacturers are not regulated in precisely the same manner is immaterial. (*In re Hixson*, 61 Cal. App. 200, 213-214 [214 P. 677].)

*Are sections 32792 and 33921 constitutional?*

■ The trial court found sections 32792 and 33921 constitutional. Section 32792 provides: "The director shall do all of the following: (a) Collect, compile, and publish statistics relative to the dairy industry, oleomargarine, and products resembling milk products. (b) Disseminate the statistics and other information useful to the general good and development of the dairy industry of the state. [Amended by Stats. 1968, ch. 1250, § 9.1, p. 2358.]" The entirety of Tip Top Foods' argument on this point is that ". . . the purpose of this penal statute is to permit . . . the dairy industry to obtain statistical information about and from the manufacturers of 'products resembling milk products' for the general good of the dairy industry without regard to the rights of the general good of the very producers forced to divulge the collected information." While the wording of subdivision (b) is perhaps somewhat unfortunate, it does not approach unconstitutionality; since the department may permissibly regulate the classes of products listed in the section, the collection and dissemination of these statistics is permissible as well. No confidential information may be revealed, of course, but it does not appear that the statute contemplates the revealing of privileged or protected information. As such, it is constitutional.

Section 33921 provides: "All of the provisions of Chapter 6 (commencing with Section 33701) of this division, apply to any building or structure in which any product resembling a milk product is manufactured, processed, or compounded, except that food which does not affect the flavor or quality of such products may be handled in such building or structure."

The trial court found this section to be constitutional. Tip Top Foods argues that there was no evidence presented at trial to support its validity, and furthermore it is unintelligible. The charge of unintelligibility does not hold up, since the provisions of the Act (those statutes commencing with § 33701) set forth with great clarity and detail the standards which must be followed. With regard to the contention of lack of evidence, Tip Top Foods is mistaken as to the burden of proof; Tip Top Foods was under a duty to present evidence showing the section was unconstitutional as applied to it, and failing such proof, the section will not be declared unconstitutional. Tip Top Foods cites no evidence in its brief to support the charge of unconstitutionality, and we are unable to understand how it could be prejudiced by the application of this section to its manufacturing plant.

### Is section 38905 constitutional?

The trial court found section 38905 to be unconstitutional. Section 38905 provides as follows: "The following persons shall not place before any patron or employee, for use as food, any product resembling milk products, unless there is displayed in a prominent place in each room where the meals are served, a sign which bears the words 'beverages and products which are not milk products are served here,' in blackfaced letters of not less than four inches in height upon a white background, or unless the words are printed on a menu which is furnished to such patrons or employees, in legible type, no smaller than that which is used to describe other food items on the menu, and upon the same portion of the menu where other food items are described: (a) The keeper or proprietor, person in charge or employee of any bakery, hotel, boardinghouse, restaurant, lunch counter, or any other place where food or drink is served to the public. (b) A person who furnishes board for other than members of his own family, or any employee where such board is furnished as compensation or as a part of the compensation of any employee." The complaint placed in issue the constitutionality of this statute. At the outset of the trial, the state conceded that as presently worded, the statute was unreasonable and unconstitutional. We agree with this concession and with the trial court's conclusion of law. In the first place, the size of the sign appears to

be less than reasonable. However, the more significant objection is that the statement "[b]everages and products which are not milk products are served here" bears no rational relation to the statutory goal of informing the consumer, since the sign could as easily be interpreted as referring to root beer as to plaintiff's products. In other words, the sign does not inform the consumer that he may be served a substitute product resembling a dairy product in place of a genuine dairy product. As such, the requirement must be found unreasonable and unconstitutional.

### *Is the act unconstitutional as a whole because it is vague?*

Tip Top Foods contends that since the definitional basis for the whole legislative enactment is vague, the entire group of statutes must therefore be struck down. Section 38912 defines "products resembling milk products" as follows: " 'Products resembling milk products' means any food product for human consumption, except those referred to in Section 38903, which has the appearance, taste, smell, texture or color of a milk product and which, taken as a whole, bears resemblance to a milk product, or could be mistaken for a milk product." Tip Top argues that under this definition it is impossible to tell what are and what are not products resembling milk products. Tip Top maintains the statute is unconstitutionally vague, because there are many products which could be mistaken for a milk product, because the statute does not designate who makes the determination, and because the statute will be enforced arbitrarily. We do not agree with this contention.

The phrase "taken as a whole" removes any objection as to vagueness in the definition. It is clear from the legislative purposes enunciated in section 38902 and from the wording of the definition that the Legislature intended to encompass within the scope of the definition only those products which bear sufficient resemblance to their dairy counterparts to require labeling and health regulations. The mere fact that there are many products clearly outside this range does not invalidate the legitimate goals of such regulatory legislation. It is obvious that the Department of Agriculture will make the initial determination, subject to review by the courts, as to what is a product resembling a milk product. We cannot presume the enforcement will be arbitrary.

Tip Top Foods furthermore contends that its products are not "products resembling milk products" within the meaning of section 38912. Tip Top Foods cites *Midget Products Inc.* v. *Jacobsen,* 140 Cal.App.2d 517 [295 P.2d 542] and *Aeration Processes, Inc.* v. *Jacobsen,* 184 Cal.App.2d 836

[8 Cal.Rptr. 85] in support of its position. Neither of these two cases, however, are in point since they were decided according to statutory terms no longer in use, and pointedly avoided any discussion of constitutional issues. Tip Top Foods' products clearly fall within the present statutory definition of "products resembling milk products."

*Are the unconstitutional provisions severable from
the remainder of the Act?*

The legislation here under attack contains a so-called "severability clause," which provides: "If any article, section, subdivision, sentence or clause of any provision of this chapter is for any reason adjudged unconstitutional or unenforceable, such decision does not affect the validity of the remaining provisions of this chapter. The Legislature hereby declares that it would have enacted all provisions of this chapter irrespective of the fact that one or more of such provisions is adjudged unconstitutional or unenforceable." (§ 38907.)

Tip Top Foods argues that the entire group of statutes is "riddled with improper, discriminatory and unenforceable provisions," which leaves virtually nothing of the regulatory scheme to accomplish the ostensible purposes of the legislation. However, it is settled that " '[U]nconstitutional provisions will not vitiate the whole act, unless they enter so entirely into the scope and design of the law, that it would be impossible to maintain it without such obnoxious provisions.' (*Danskin* v. *San Diego Unified School Dist.* (1946) 28 Cal.2d 536, 555 [171 P.2d 885]; *People* v. *Lewis* (1939) 13 Cal.2d 280, 284 [89 P.2d 388].)" (*In re King,* 3 Cal.3d 226, 237 [90 Cal.Rptr. 15, 474 P.2d 983].) Applying this test to the facts of the instant case, it is clear that the Act may be maintained effectively without the provisions here stricken down. The only sections found unconstitutional herein relate to the prohibition of the sale of products resembling milk products to penal or charitable institutions which receive assistance from the state (§ 38904), and the signposting requirement of section 38905 which the defendants concede is unconstitutional. It is plain that the proper goals of the statutes here in question (i.e., prevention of deception and protection of public health) are not weakened by the striking down of the aforementioned provisions; in fact, the reason they are being struck down is that they do not reasonably accomplish the permissible goals of the legislation. Consequently, the remainder of the statute may properly survive without the invalid provisions.

*Did the trial court err in admitting certain items of evidence?*

Tip Top Foods claims that the trial court erroneously admitted certain items of evidence offered by defendants; defendants claim that the trial court erroneously excluded certain evidence offered by defendants. A brief discussion of each of these items follows.

The first item of evidence which Tip Top Foods contends was improperly admitted concerns the testimony on cross-examination of George Young, one of Tip Top Foods own experts. He was asked on cross-examination the results of a "blind test" he had conducted; he admitted that in the course of the test, he had mistaken "Hi-Lo" for sour cream. Tip Top Foods contends the admission of this statement was an erroneous disclosure of the work product of its counsel, citing *Dow Chemical Co.* v. *Superior Court,* 2 Cal.App.3d 1 [82 Cal.Rptr. 288], and *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122 [3 Cal.Rptr. 621, 86 A.L.R.2d 129]. However, as the state correctly points out such testimony was within the permissible scope of impeachment of the witness' testimony. Furthermore, the work product rule relates to disclosure in pretrial discovery and cannot be used to bar otherwise proper cross-examination and impeachment.

The second item of evidence which Tip Top Foods contends was improperly admitted related to the testimony of Dr. Hill, one of state's expert witnesses, who testified that milk products are as a class nutritionally superior to products resembling milk products. Tip Top Foods' argument that this item of evidence was irrelevant is wholly without merit, since the evidence is directly relevant to show a reasonable basis for the Legislature's classification of products resembling milk products.

The third item of evidence which Tip Top Foods contends was improperly admitted was a survey conducted by the Department of Agriculture of consumers in two state cafeterias concerning their ability to identify Tip Top Foods' products. Part of the answers were held admissible and part inadmissible. Tip Top Foods' argument that there was no foundation for the admissibility of the survey is without merit, since it appears that the admissible part of the survey was taken before the questionee learned the product was not sour cream. In any event, the trial judge realized the defects in the survey and we must assume that he gave proper weight to the evidence. The cases cited by plaintiff, *Standard Oil Company* v. *Standard Oil Company* (10th Cir. 1958) 252 F.2d 65, 75, and *Miles Laboratories, Inc.* v. *Frolich* (S.D.Cal. 1961) 195 F.Supp. 256, are not

to the contrary, since they held surveys properly admissible against the objections that the answers were hearsay.

The fourth item of evidence to which Tip Top Foods unsuccessfully objected was the introduction into evidence of labels of many other products resembling milk products. Tip Top Foods' contention is that the labels were not relevant, some of them were incomplete, and some had not been in use for a number of years. As respondent notes this evidence was relevant to show the need for legislation regulating products resembling milk products.

Finally, Tip Top Foods contends that various exhibits were "clearly irrelevant." Urged as error was the introduction of Exhibit I (a chart relating to standards of dairy products of 1967), and the introduction of Exhibit E (relating to price subsidies for milk products). While the relevance of these items does seem marginal, we cannot say the trial court erred in admitting them, especially since their remoteness from the issues dictates the conclusion that their introduction could not have been prejudicial to plaintiff's case.

The state urges three errors in the introduction of evidence alleged to have been irrelevant. The first item related to the testimony of one Peter J. Benedetti, who would have testified that he observed signs in various restaurants advertising the sale of sour cream, and subsequently ascertained that the product was in reality "Sour C." The court excluded this evidence on the ground that it did not relate to conduct of Tip Top Foods.

The second item related to the offered testimony of a consumer expert and a manager of a cooperative store. She would have testified that many consumer inquiries related to "Sour C" and its composition, and that there was much consumer confusion.

The third item related to offered testimony of William Ketchum, Chairman of the Assembly Agricultural Committee of the State Legislature. His testimony would have related to the legislative purpose in enacting the regulatory measures under attack.

The trial judge was well within his very broad discretion under Evidence Code section 352 in excluding the offered evidence, and we cannot say that he abused that discretion, since much of the evidence was cumulative.

The judgment is reversed and the cause is remanded to the trial court

with directions to modify the findings of fact, conclusions of law, and judgment in conformity with the views expressed herein. Each party to bear its own costs.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied December 6, 1972. On November 24, 1972, the opinion was modified to read as printed above. The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied January 3, 1973.